# Benjamin B. Abrahams, Appellant, *v.* Myer Alsberg and John P. Kidd.

*Alleys—Boundaries—Contract.*

M. and B. were the owners of adjoining properties. The deeds to M. and B. each included one half of a two feet ten inches wide alley between the premises. M. subsequently had a survey made, and discovered that the whole of the alley was located upon his ground. M. and B. then entered into an agreement which provided that said "alley shall be closed and vacated, to the same force and effect as if the said alley had never been laid out and opened, and that the boundary line between the ground of the said B. and M. for the depth of forty-one feet from S. street shall be the centre of said alley as the same is now laid out and opened and about to be vacated; and that from the said depth of forty-one feet from said S. street the ground of the said M. shall be of the full width of nineteen feet three inches, notwithstanding any variations of said alley from the regular lines, as the same may have been laid out and opened on the said ground

used by the said B." A tenant of B. refused to give up possession of the alley which his lease gave him the right to use.

A second agreement was then entered into between M. and B. which recited that the alley had been closed and vacated under the first agreement, and also that M. was about to erect a building on his lot, and then continued as follows: "That the said M. hereby covenants and agrees that in erecting and building that he will leave open the said alley of the said width of two feet ten inches to the height of at least eight feet from the level of the pavement until such time as the lease of B.'s premises shall expire, at which time M. is to be at liberty to build up the east wall from the centre of said alley, and the said B. is to be at liberty to use the whole of the said east party wall without any charge therefor. *Held*, (1) that under the agreement M. gave up half of the alley of forty-one feet from S. street and obtained the whole of the rest of the alley, and had his lot widened to a full width of nineteen feet three inches; (2) that the wall which was built over the centre of the alley was the eastern boundary line of M.'s property for forty-one feet from S. street; (3) that B. and his successors in title had the right to use the whole of this wall as a party wall without any charge therefor.

Argued Jan. 16, 1896. Appeal, No. 112, Jan. T., 1895, by plaintiff, from decree of C. P. No. 2, Phila. Co., Dec. T., 1892, No. 926, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain the use of a wall as a party wall. The case was referred to Dimner Beeber, Esq., as master, who reported as follows:

The dispute in this case is about an alley two feet ten inches wide, between properties numbered 220 and 222 South street, Philadelphia. It is agreed by both parties that the title to both of the above premises was in one Robert Coburn, by deed, dated April 4, 1828, recorded in deed book G. W. R., No. 15, page 737.

The plaintiff's chain of title is as follows:

Deed by Peter Williamson et al., executor of the last will of Robert Coburn, deceased, to Thomas Holt, dated March 17, 1870, recorded in deed book J. A. H., No. 31, page 91, etc.

In this deed the language descriptive of the premises conveyed is as follows:

"All the certain messuage or tenement, and lot or piece of ground situated on the south side of South street at the distance of 191 feet 9 inches west from Second street (now No. 222),

containing in front or breadth on said South street, 19 feet 3 inches, including the west half of a 2-foot-10-inches wide alley on the east side thereof, and in length or depth southward, 81 feet, be the same in breadth or depth more or less; together with the right and free use of the aforesaid 2-foot-10-inches wide alley, extending of that width the depth of 50 feet from South street, then narrowing from each side to a point at the distance of 53 feet from said street, as a passage way and water course, and to lay pipes therein for the introduction of the Schuylkill water, in common with the owners, tenants and occupants of the contiguous premises on the east, and also the right to build over the west half of said alley, leaving a clear headway of at least 8 feet in height."

In the proceedings in court of common pleas No. 1, of Philadelphia county, of March term, 1876, No. 1057, the then sheriff, William Elliott, by deed poll dated June 10, 1876, acknowledged the same day in open court and recorded in sheriff's deed book, No. 46, page 576, conveyed the premises described in the same language as above set forth to Edward Holt. By deed of October 19, 1876, Edward Holt et ux. conveyed the premises described in the same language to Louis Myerhoff. By deed of June 19, 1883, Louis Myerhoff et ux. conveyed the premises, described in the same language, to Benjamin B. Abrahams, the plaintiff in the bill.

The defendants' chain of title is as follows:

Deed by Peter Williamson et al., executors of the last will of Robert Coburn, deceased, to Mary Briscoe, dated March 17, 1870, for "all that certain messuage or tenement and lot or piece of ground situate on the south side of South street, at the distance of about 172 feet 6 inches west from Second street (now 220), containing in front or breadth on said South street 19 feet 3 inches, including the east half of a 2-foot-10-inches wide alley on the west side thereof, and in length or depth, thence southward 81 feet, be the same more or less in breadth or depth; together with the right and free use of the aforesaid 2-foot-10-inches wide alley, extending of that width the depth of 50 feet from South street, then narrowing from each side to a point at the depth of 53 feet from said street, as a passage way and water course, and to lay pipes therein for the introduction of Schuylkill water in common with the owners, tenants and occupants

of the contiguous premises on the west; and also the right to build over the east half of said alley, leaving a clear headway of at least 8 feet in height."

By deed of February 2, 1876, Thomas Holt et al., executors of the last will of Mary Lees (formerly Briscoe), conveyed the premises described in the same language to William Briscoe. By deed of January 2, 1883, William Briscoe et ux. conveyed the premises in question to Abraham M. Frechie. In this deed the description of the premises conveyed is as follows :

" All that certain lot or piece of ground with the buildings and improvements thereon erected, situate on the south side of South street, bounded and described according to a recent survey thereof, made on the 14th day of November, A. D. 1882, by Thomas Daly, Esq., surveyor and regulator of the First district, as follows : " Beginning at a point in the lines of said South street, side of South street at the distance of 172 feet 6 inches westward, from the west side of Second street, thence southward at right angles with said South street, along the line of Charles Carr, 80 feet 2 inches, to ground now or late of Thomas Drake, thence by same westward, parallel with said South street, 19 feet 2 inches, to ground of Louis Meyerhoff, thence by same northward 37 feet 2 inches, thence still by same northwestward 1 foot 7 inches, and one-half of an inch to the centre of an abandoned alley way, thence by said centre line northward 42 feet to the south side of said South street, and thence by same eastward 20 feet, 3¾ inches to the place of beginning."

By deed of January 15, 1892, Abraham M. Frechie et ux. conveyed the premises, described as in the last above mentioned deed, to Myer Alsberg, one of the defendants in the bill.

On the 12th day of March, 1877, William Briscoe, who then owned No. 220 South street, and Louis Meyerhoff, who then owned No. 222 South street, executed a written agreement, in which, after reciting the title of each to his own lot, it was agreed as follows :

" Now this indenture witnesseth, that the said William Briscoe and Louis Meyerhoff, in consideration of the premises and of the sum of one dollar, lawful money to each of them, by the other, well and truly paid at the time of the execution hereof, the receipt whereof is hereby acknowledged, have and each of them hath, and by these presents do and each of them doth,

covenant, promise and agree to and with the other, his heirs and assigns, that the said hereinbefore mentioned alley shall be closed and vacated, to the same force and effect as if the said alley had never been laid out and opened, and that the boundary line between the ground of the said William Briscoe and Louis Meyerhoff, for the depth of 41 feet from the said South street, shall be the centre of said alley, as the same is now laid out and opened and about to be vacated, and that from the said depth of 41 feet from the said South street the ground of the said Louis Meyerhoff shall be of the full width of 19 feet 3 inches, notwithstanding any variation of said alley from the regular lines, as the same may have been laid out and opened on the said ground used by the said William Briscoe." On the same day the same parties executed another agreement in writing as follows:

" Whereas the said Louis Meyerhoff is the owner of the premises No. 222 South street, and the said William Briscoe is the owner of premises No. 220 South street,

" And whereas, there has been between the said premises a certain alley 2 foot 10 inches front, and 53 feet deep from said South street, and which said alley by a certain agreement this day made and executed, has been closed and vacated,

" And whereas, said Louis Meyerhoff is about erecting a building on his said lot,

" Now this agreement witnesseth, that the said Louis Meyerhoff hereby covenants and agrees that in erecting and building that he will leave open the said alley of the said width of two feet ten inches to the height of at least eight feet from the level of the pavement until such time as the lease of tenant of premises No. 220 South street shall expire, which will be about the 20th day of November, 1880, at which time the said Louis Meyerhoff is to be at liberty to build up his east wall from the centre of said alley, and the said William Briscoe is to be at liberty to use the whole of the said east party wall without any charge therefor."

Both these agreements were acknowledged on the day of their date before the same notary public and were recorded on the same date, to wit, on March 28, 1878. A short time before these two agreements were made Meyerhoff had a survey made when he discovered that the whole of the alley was located on his ground. He then went to Briscoe and the first agree-

ment was made.  Briscoe says that at this time Hyland, who was his tenant of 220 South street, agreed to this, but when Hyland was asked to give up possession of the alley which he enjoyed under the lease, he refused.  The second agreement was then executed and Briscoe than gave Meyerhoff $200 for the whole of the party wall.  Meyerhoff then built, or improved, his property, in doing which he left the two-foot ten inches wide alley as it had been up to the joists of the second floor.  These joists he extended across the alley and some inches into the wall of Briscoe's property.  From these joists upward to the roof Meyerhoff built the eastern wall of his house exactly over the middle of the alley.  He also about this time erected a new dividing fence between his property and Briscoe's, and in all probability the new fence extended southward on a line with the western wall of Briscoe's property.  Prior to this the old fence extended southward from the middle of the alley.  The new fence, however, did not extend the whole length of the lot on a line which gave Meyerhoff full nineteen feet three inches breadth to his property, for the evidence shows that defendant's privy extended over the plaintiff's property about six inches.

In this condition premises No. 222 were conveyed to Benjamin B. Abrahams, the plaintiff, on June 19, 1883.  Some four or five years afterwards plaintiff built a new foundation in the alley and built upon it his first story eastern wall exactly under this second and third story eastern wall as erected by Meyerhoff, which was over the middle of the alley.

Early in the year 1893 defendant began to improve his property, and in doing so was about to use plaintiff's eastern wall as a party wall, when plaintiff filed the bill to restrain him from so doing.

The correct decision of this case can be reached only by the proper interpretation of the two agreements of March 12, 1877.  The plaintiff contends that the parties did not intend that Meyerhoff was to give up any part of the frontage of his property, whilst the defendants contend that it was the intention of the parties that Meyerhoff was to build his new eastern wall on the center of the alley, and that this should be the eastern boundary line of Meyerhoff's property to the depth of forty-one feet from South street.  The meaning of the two contracts or agreements seems very plain to the master, and the testimony before

him, taken as a whole, only confirms his views. When Meyer-hoff concluded to improve his property he had a survey made, when he discovered, as he says, that the whole of the alley was on his ground. He also knew at that time that Briscoe or his tenants claimed the right to use the alley and exercised that right in having access to the property on the east. The language of the deeds from Coburn, who was the common ancestor in the title of both parties, as well as that of all the deeds of the parties between Coburn and each of them, shows that every-one thought that the alley was half of Briscoe's and half of Meyerhoff's property, for they all describe the alley as extending fifty feet from South street two feet ten inches wide and "then narrowing from each side to a point at the distance of fifty-three feet from said street." This is further confirmed by the fact that at the time Meyerhoff had his survey made, preparatory to beginning his improvements, the old fence extended from this point to the alley southward to the end of both plots. With this knowledge he went to Briscoe, and the first agreement, vacating the alley, was made under the impression that Hyland, the tenant, agreed to the vacation of the alley. After it was made it was discovered that the then tenant Hyland would not agree to the vacation of the alley, so the second agreement as to the manner of building over the alley was made. The first agreement, after reciting the title of each of the parties to their lots, witnesses that each promises and agrees with the other, his heirs and assigns, "That the said hereinbefore mentioned alley shall be closed and vacated, to the same force and effect as if the said alley had never been laid out and opened, and that the boundary line between the ground of the said William Briscoe and Louis Meyerhoff for the depth of forty-one feet from said South street shall be the centre of said alley as the same is now laid out and opened and about to be vacated; and that from the said depth of forty-one feet from the said South street, the ground of the said Louis Meyerhoff, shall be of the full width of said nineteen feet three inches, notwithstanding any variations of said alley from the regular lines, as the same may have been laid out and opened on the said ground used by the said Briscoe." It does not seem possible to doubt what is meant by the above language. It plainly says that hereafter it is agreed that the "boundary line between

the ground of the said William Briscoe and Louis Meyerhoff for the depth of forty-one feet from said South street shall be the centre of said alley, as the same is now laid out and opened." If when this agreement was made Meyerhoff had discovered that the whole of this alley was on his ground, then he must certainly have understood that for the depth of forty-one feet from South street he was giving up to Briscoe one half of it, for he was agreeing that the boundary line between him and Briscoe should be the center of the alley for forty-one feet from South street. That this is evident appears from the immediately following clause of the agreement, wherein he stipulates that from the depth of forty-one feet from said South street his ground shall be of the full width of said nineteen feet three inches. He was giving up half the alley for forty-one feet from South street, and he was getting the whole of the rest of the alley, which was about twelve feet longer, and also getting his lot widened to the full width of nineteen feet three inches.

The meaning of the second agreement is equally plain. It explains why Meyerhoff did not immediately build up his east wall from the center of the alley to the second story, and it also confirms the view that the first agreement intended that the wall built over the center of the alley was to be the eastern boundary line of his property for forty-one feet from South street, for he expressly calls it an east party wall. It also shows that Briscoe was to have the right " to use the whole of the said east party wall without any charge therefor."

There is another feature of the case, however, which the master has to consider. When the testimony closed and the final arguments were made it appeared that the privy of defendant Alsberg extended six inches over onto the rear of plaintiff's premises. The master is of the opinion that this is in violation of the agreement of March 12, 1877, and decides to enter a decree directing this to be removed, and any and all other obstructions, if any, that interfere with the right of plaintiff to have his lot, beginning at a point forty-one feet from South street, measure in width nineteen feet three inches from that point to the end of his lot.

Upon the question of the costs of the suit the master is of the opinion that it would be just and proper to divide them equally between plaintiff and defendant Alsberg.

He therefore recommends the entry of a decree, to be prepared and submitted by counsel to him for approval, declaring and fixing first, the boundaries of plaintiff's property, as the master has interpreted the contracts of March 12, 1877; second, directing the removal of any and all obstructions that prevent plaintiff from having the full width of nineteen feet three inches of lot from a point forty-one feet south from South street to the end of his lot; third, directing the costs to be paid by the plaintiff and defendant in equal proportions.

Exceptions to the master's report were dismissed by the court, and a decree entered in accordance with the master's recommendation.

*Error assigned* was above decree.

*William Drayton*, for appellant.—The construction of documents where there is no ambiguity is to be ascertained from the language of the instruments : Jones v. Newman, 1 Wm. Blackstone, 60 ; Hoffman v. R. R., 157 Pa. 174 ; Jessop v. Ivory, 158 Pa. 71 ; Hall v. Phillips, 164 Pa. 494 ; Daly v. Reilly, 159 Pa. 605 ; Thayer v. Seep, 168 Pa. 415 ; Phillips v. Miely, 106 Pa. 536.

The construction of these two agreements is to be made by the court, and due weight should be given ; (*a*) to the recitals in the two agreements ; (*b*) to the fact that the only alley referred to is the one mentioned in the recitals : Stow v. Wyse, 7 Conn. 214 ; Carver v. Jackson, 4 Peters, 1 ; Penrose v. Griffith, 4 Binn. 231 ; Green's App., 97 Pa. 342 ; Lainson v. Tremere, 1 Ad. & El. 792 ; Cox v. James, 45 N. Y. 557 ; Young v. Rainock, 7 Man. G. & Scott, 310 ; Olwine v. Holman, 23 Pa. 279 ; Gaw v. Hughes, 111 Mass. 296 ; Peake v. Schreech, 7 Q. B. 603 ; Esdaill v. Maclean, 15 M. & Wel. 277 ; Carver v. Carver, 97 Ind. 497 ; Reg. v. Eyre, 7 Ell. & B., 619.

The master has found that the agreements referred to another alley, but as he has stated the facts upon which he bases that conclusion, the court can draw its own inference from these facts : Kutz' App., 100 Pa. 75 ; Sproull's App., 71 Pa. 137 ; Phillips's App., 68 Pa. 130 ; Dubois Cemetery Co. v. Griffin, 165 Pa. 81.

*Wm. F. Johnson*, for appellees.

PER CURIAM, January 27, 1896:

We find no error in this record that requires either a reversal or modification of the decree. The questions involved in the specifications of error, so far as they are material, have been sufficiently considered by the learned master in his clear and convincing report. On it we affirm the decree and dismiss the appeal with costs to be paid by the plaintiff.